WILLIAM LYON and ANN, his wife, appellants,

*v.*

WILLIAM H. STANFORD, respondent,

Under special circumstances a wife was held bound by a judgment at law against her husband, on the ground that she was a real, though not a nominal, party to the litigation.

On appeal from a decree advised by Vice-Chancellor Van Fleet, whose opinion is reported in *Stanford* v. *Lyon, 10 Stew. Eq. 94.*

*Mr. Ludlow McCarter* and *Mr. Barker Gummere,* for complainant.

*Mr. Thomas N. McCarter,* for defendants.

The opinion of the court was delivered by

DIXON, J.

On May 1st, 1864, Luther G. Thomas died, leaving a will by which he devised to Lemuel Thomas his real estate in fee—

" Upon conditions, nevertheless, that he shall permit William H. Stanford to carry on the business of a druggist in that part of the premises situated on the southeasterly corner of Elm and Mulberry streets, now occupied by him, as long as he shall desire to use it for that purpose, at an annual rent not to exceed one hundred dollars."

At that time Stanford kept a drug-store in part of the building on said premises, the other portion being occupied by a tenant of the testator, as a residence.   On May 1st, 1866, Lemuel Thomas conveyed to Ann Lyon, wife of William Lyon, in fee, the said premises on the southeasterly corner of Elm and Mulberry streets, in Newark, subject to the right and interest of William H. Stanford therein ; under which conveyance William

Lyon with his family went into possession of said premises. Early in November, 1870, William Lyon began to erect a building in the yard of said premises, and Stanford, deeming the same an encroachment upon his rights in the yard, tore down the structure. On November 7th, 1870, Lyon resumed the work, and on the next day Stanford filed a bill in chancery against Lyon and his wife, alleging that, as appurtenant to his drug-store, he had the right to use the hydrant and privy in the yard, to use the yard for the purpose of light and ventilation to his store and office, and to use a gate on Elm street for ingress and egress; that the defendants were erecting a building which would prevent his enjoyment of these rights, and praying that they might be restrained from proceeding with its construction, and from interfering with Stanford in the removal of what was already built. A preliminary injunction was granted, but, on the coming in of the answer, was dissolved June 11th, 1871, because the complainant's rights had not been established at law. Soon after, Stanford brought an action of trespass on the case in the supreme court against William Lyon, and averred in his declaration that he had, as appurtenant to his drug-store, the right to occupy, possess and enjoy, in common with the occupants of the other part of said building, the yard of said premises, and the privy and hydrant in the yard, and to have access thereto by a certain gate, and to have the yard free and unobstructed for the purpose of light and ventilation to his store, and that the defendant had interfered with his enjoyment of said rights. Lyon pleaded the general issue. On the first trial the plaintiff was nonsuited, but that judgment was reversed by this court on the opinion reported in *Stanford* v. *Lyon, 8 Vr. 426*, by which the devise to Stanford was construed, and its extent left to be determined by proof of what he had held and occupied at the death of the testator by virtue of any valid agreement with him. The second trial resulted in a verdict for the plaintiff, which the supreme court refused to disturb, and the plaintiff took judgment thereon. Stanford then filed a supplemental bill in chancery against William and Ann Lyon, setting out the proceedings on his original bill and the suit at law, and alleging that his rights

Lyon v. Stanford.

in the yard included also the right to use it for the storage of boxes, barrels and other things of like kind which accumulated in his business, and praying a decree and injunction requiring the abatement of the building in the yard, which had been erected since the first injunction was dissolved, and restraining the defendants perpetually from interfering with the complainant's said rights. The defendants answered, denying the alleged rights of the complainant, and on final hearing, the chancellor decreed in substantial compliance with the prayer of the bill. From this decree the defendants have appealed.

The rights which the complainant claims in the yard are purely legal, both in their origin and in their nature. The pleadings and testimony show that they are not only disputed, but are involved in real controversy. To maintain them, the credibility or accuracy of witnesses must be impugned, and favorable inferences must be drawn from ambiguous circumstances. The withholding of them does not work irreparable injury to the complainant. According to the rules laid down at this term, in *Leonard* v. *Hart, infra 416,* there is no ground upon which a court of equity can be invoked to ascertain and defend such rights, except as they may have been established at law. It is, therefore, necessary to consider whether, and how far the complainant's rights have been so established.

The suit at law was instituted against William Lyon alone. Ann Lyon was, and is the owner of the property affected by the decree. Unless, therefore, it appears that her rights ought to be regarded as settled by the judgment against her husband, the court of chancery had no jurisdiction over her claims.

In my opinion, that suit at law should be deemed to have settled her rights.

The undisputed facts are that the property was purchased by William Lyon; was paid for with his money; was occupied by him with his family; that he, in his own name, collected the rents due from the complainant; that all the alterations and improvements on the premises, including that now complained of, were made by him at his own expense; that in all respects he acted as if invested with perfect control over the possession and

protection of the property; that when the complainant remonstrated with Ann Lyon against the erection of the new building in the yard, she told him she had no authority, and he must see her husband; that Mrs. Lyon attended, and was a witness at both trials of the action at law, and that that action was defended on her title by the same means, in the same manner, and to the same extent as if she had been a party on the record. The charge of the trial judge also shows that the issue was presented to the jury as conclusive of all controversy over the rights of the plaintiff averred in the declaration. I cannot doubt that if Ann Lyon had been named as a defendant with her husband, her knowledge of, and participation in the suit would have been just what they were, and the conduct of the cause would have differed in no respect from that actually pursued. The defence made was, in reality, her defence, interposed, with her consent, by her agent, and substantially on her behalf, and if it had prevailed, she would have insisted (and with justice) that it estopped the plaintiff from any further denial of her right to maintain the building which her husband had erected for her. Under these circumstances, the mere absence of her name from the record will not absolve her from the binding force of the judgment. Judgments become conclusive, not only on the apparent parties, but also on those who are the real litigants. In *Warfield* v. *Davis, 14 B. Mon. 40,* Warfield was held bound by a judgment which Davis, a reputed slave, had obtained against one Tingle in a suit to establish his right to freedom, the court saying: "Tingle was Warfield's agent, and had Davis in his possession in that capacity when the suit was instituted, and it is perfectly evident that Warfield not only knew of the pendency of the suit, but acted, and was regarded by the court as the real party in interest in defending it. His privity, therefore, is sufficiently established, and he is as much bound by the judgment as if he had been a defendant in the suit." Similarly, in *Castle* v. *Noyes, 14 N. Y. 329,* one Rank had, at Castle's order, seized some lumber which was in Noyes's possession; thereupon Noyes had brought suit in trover against Rank, which suit Castle helped Rank to defend, and Rank obtained judgment. When, after-

wards, Noyes sued Castle for the lumber, the court held that the former judgment against Noyes was conclusive in Castle's favor. On like grounds, others than those who are parties on the record are held responsible for costs.   *Webb* v. *Ward, 7 T. R. 296 ; Waring* v. *Baret, 2 Cow. 460 ; Davenport* v. *Elizabeth, 14 Vr. 149.*

In accordance with these and similar cases, I think Mrs. Lyon should be considered bound by the judgment in *Stanford* v. *William Lyon,* as a real defendant, and so far as the complainant's rights were set up in that suit they should be deemed established at law, and should now be maintained by our decree. They were then not so broadly asserted as they are in the supplemental bill, and as they are supported by the present decree.

My conclusion is that the decree below should be so modified as to define the complainant's rights as they are defined in the declaration at law, and to command the defendants to restore the premises to such condition as will enable the complainant to have full use and enjoyment of those rights, and to restrain the defendants perpetually from interfering with such use and enjoyment.

That portion of the decree from which the complainant has appealed, in which the chancellor refused to assess the complainant's damages growing out of the obstruction of his rights, is in accordance with prior decisions, and should be affirmed.

The defendants are entitled to costs of both appeals, although the complainant will remain entitled to costs in the court below.

*Decree unanimously modified.*