586 P.2d 1079

AMERICAN BANK OF COMMERCE,
Plaintiff-Appellee and
Cross-Appellant,

v.

M & G BUILDERS, LTD., Sunland
Builders, Inc., Defendants-Appellees
and Cross-Appellees,

v.

COACHMAN REAL ESTATE INVEST-
MENT CORP., William Wieman, George
Headrick, Doug Stock, Bob Bowersock
and Coachman Albuquerque Partner-
ship, Defendants-Appellants and Cross-
Appellees.

No. 11727.

Supreme Court of New Mexico.

Oct. 23, 1978.

Rehearing Denied Nov. 27, 1978.

Thomas L. Grisham, Albuquerque, for plaintiff-appellee and cross-appellant.

William Madison, Albuquerque, for defendants-appellees and cross-appellees.

Kool, Kool, Bloomfield & Eaves, John L. Hollis, Albuquerque, Warren S. Zweiback, Omaha, Neb., for defendants-appellants and cross-appellees.

## OPINION

FEDERICI, Justice.

Coachman Real Estate Investment Corporation (Coachman), appellant and cross-appellee, is a general contractor. It entered into subcontracts with M & G Builders, Ltd. and Sunland Builders, Inc. (M & G–Sunland). Coachman's subcontract with M & G–Sunland was for the original sum of $138,727.02. Various oral modifications were made to the subcontract, but these modifications were found by the trial court to be irrelevant to the issues involved in the lawsuit. Subsequently, Coachman signed a "Letter of Assignment" addressed to the American Bank of Commerce (ABC), appellee and cross-appellant, the text of which reads:

> This letter is to inform you that funds in the amount of $138,727.02 will be paid to Sunland Builders Inc./M & G Builders, Ltd. per subcontract agreement dated March 4, 1976. These funds are available through an interim financing loan at Bank of New Mexico and will be disbursed by an Albuquerque New Mexico title co. Payments will be made by checks written payable to Sunland Builders Inc./M & G Builders, Ltd. and American Bank of Commerce. This assignment of funds is made at the request of Wayne H. Gribble, President of Sunland Builders Inc./M & G Builders, Ltd.

The trial court found that the Letter of Assignment was given for the purpose of inducing the bank to lend M & G–Sunland funds for the performance of the subcontract with Coachman.

The subcontract between Coachman and M & G–Sunland required that M & G–Sunland provide waivers of lien and evidence of payment of labor and material costs as a condition to final payment. In accordance with the Letter of Assignment, Coachman made payment by check payable to M & G–Sunland and ABC in the amount of $126,984.00. M & G–Sunland did not furnish waivers of lien or releases in connection with a request for final payment of the balance of the amount stated in the Letter of Assignment or $11,743.02. ABC brought this action against M & G–Sunland for advances made to them and joined Coachman as a party defendant. The trial court granted judgment to ABC against Coachman for the balance owing under the Letter of Assignment for advances made by ABC, but not to exceed a total of $138,727.02. The trial court held against ABC on its claim for amounts advanced by ABC in excess of $138,727.02.

Appellant Coachman contends, first, that the trial court failed to make sufficient findings of fact and conclusions of law to show on what basis judgment was granted for ABC, and, second, that the trial court erred in concluding that the Letter of Assignment created an independent obligation on the part of Coachman to pay the amount stated in the Letter of Assignment.

By its findings of fact and conclusions of law the trial court made clear that the case was decided upon the basis that the Letter of Assignment constituted a binding agreement or contract between Coachman and ABC to pay up to but not to exceed the

entire $138,727.02. The trial court determined that this agreement was breached by Coachman. We do not agree with Coachman's contention that this theory of relief was not litigated before the trial court. ABC did plead this theory in its complaint and introduced evidence without objection. ABC also mentioned this theory in its opening statement and final argument to the trial court. The issue was litigated. Under Rule 15(b), Rules of Civil Procedure [§ 21–1–1(15)(b), N.M.S.A.1953 (Repl.1970)] and prior opinions of this Court, the pleadings are considered amended to conform to the evidence. *In re Sedillo,* 84 N.M. 10, 498 P.2d 1353 (1972); *Luvaul v. Holmes,* 63 N.M. 193, 315 P.2d 837 (1957).

■■■ As to Coachman's second contention, the trial court ruled that the liability of the parties under the Letter of Assignment was on a . contract basis; that the Letter of Assignment created an independent obligation on the part of Coachman to pay. We agree. The Letter of Assignment, which was signed by Coachman and relied upon by the bank in making the loans to M & G–Sunland, was more than a simple assignment. We hold that by virtue of this instrument Coachman agreed to pay the entire stated amount to ABC. This instrument constituted an independent contract between Coachman and ABC and simply provided additional protection to the bank for the making of the loan to M & G–Sunland. *Farmers & Merchants State Bank v. Snodgrass & Sons Const. Co.,* 209 Kan. 119, 495 P.2d 985 (1972). Being an independent contract, rather than a simple assignment, this written agreement is not governed by the Uniform Commercial Code—Secured Transactions [§§ 50A–9–101 to 50A–9–507, N.M.S.A.1953 (Repl.1962 and Supp.1975)]. It is our opinion that the trial court did not err in granting judgment to ABC against Coachman for the balance owed ABC (approximately $11,000) for advances made to M & G–Sunland under the Letter of Assignment.

■■ It is further our opinion that the trial court did not err in denying relief to ABC for amounts in excess of a total of $138,727.02, the amount specified in the Letter of Assignment. The transcript reveals that the trial court found the Letter of Assignment ambiguous as to the amount owed by Coachman to ABC under it. Where a contract is ambiguous, the intent of the parties is to be ascertained from the language and conduct of the parties and the surrounding circumstances, and oral evidence as to that intent is admissible. Prior to admitting the evidence the court must find that there is an ambiguity. *Sierra Blanca Sales Co., Inc. v. Newco Industries, Inc.,* 84 N.M. 524, 505 P.2d 867 (Ct.App. 1972). The trial court concluded that the contract was ambiguous and properly permitted evidence to be introduced to determine the intent of the parties. The amount in excess of the sum specified in the Letter of Assignment was a result of oral modifications between Coachman and M & G–Sunland. ABC was not a party to these modifications, and the contract between Coachman and ABC was not affected thereby.

The judgment of the trial court is affirmed.

IT IS SO ORDERED.

McMANUS, C. J., and PAYNE, J., concur.

EASLEY, Justice, dissenting:

The implications of the rule contained in the majority opinion extend far beyond this dispute. It will have a statewide impact on present practices in banking, contracting and other businesses.

The Coachman letter to ABC simply said "funds * * * will be paid to Sunland * * * *per subcontract* agreement dated March 4, 1976 * * * by checks * * * to Sunland * * * and American Bank * * * This *assignment of funds* is made at the request of Wayne H. Gribble, President of Sunland * * * *"* (Emphasis added.)

Does this mean that only when the funds become due to Sunland, under the terms of the contract, they are assigned to ABC? If so, under U.C.C. § 50A–9–318, N.M.S.A. 1953, ABC's right to the funds is subject to

the defenses asserted by Coachman against his defaulting subcontractor.

Or, is this an "independent contract" whereby Coachman agreed to pay $138,-727.02 to ABC, regardless of contract obligations and whether or not Sunland did any work at all? In substance, the majority answers this question in the affirmative. We disagree.

Coachman plainly agreed to assign the funds to ABC "per" contract, which means "by, through, or by means of" the Sunland contract. Black's Law Dictionary, Fourth Ed., Rev'd (1968). The phrase "per charter party" has been held to effect an incorporation by reference of a charter party agreement into a later writing. *Lowery & Co. v. S.S. Le Moyne D'Iberville,* 253 F.Supp. 396 (S.D.N.Y.1966); *Lea v. Helgerson,* 228 S.W. 992 (Tex.Civ.App.1921).

The subcontract specified that the final payment would be due Sunland when the work was completed *in accordance with the contract;* that Sunland would pay for all materials and labor; that, if Sunland failed, Coachman would make good the deficiencies and deduct the cost from the payments. Where a writing refers to a separate agreement, that agreement or so much as is referred to should be considered as part of the writing. *Turner v. Wexler,* 14 Wash. App. 143, 538 P.2d 877 (1975). All writings forming a part of a transaction are interpreted as a harmonious whole. *McDonald v. Journey,* 81 N.M. 141, 464 P.2d 560 (Ct. App.1970). Thus, the letter, together with the subcontract, constitute a conditional promise to pay.

The arrangement indicated by the letter, which undoubtedly occurs many times daily in New Mexico, was a simple device to insure the bank of receiving money owed to Sunland by Coachman when the amounts came due. The total content of the letter meant: "I'll put your name on the check when I pay Sunland what is owed." The letter did not guarantee payment of Sunland's debts. The terms of the letter are not ambiguous, although the case was tried on the theory of ambiguity.

If it be construed that there is ambiguity, then, we must look to the record for evidence showing the intentions of the parties. *In re Will of Carson,* 87 N.M. 43, 529 P.2d 269 (1974). This intent is to be ascertained from the language and conduct of the parties and the surrounding circumstances; parol testimony is admissible. *Sierra Blanca Sales Co., Inc. v. Newco Industries, Inc.,* 84 N.M. 524, 505 P.2d 867 (Ct.App.1972). In this regard, the testimony of ABC's Mr. Vogl made it clear no less than six different times that it was understood that the payments of money to ABC were to be made by Coachman only if Sunland performed under its contract with Coachman and became entitled to payment. Both writings concern the same subject matter and were executed at about the same time. Present values were to accrue at about the same time. It is not the province of the court to amend or alter a contract by construction. It must interpret and enforce the contract which the parties made for themselves. *Owen v. Burn Const. Co.,* 90 N.M. 297, 563 P.2d 91 (1977). In effect the agreement here, as understood by both parties, is being changed by the majority opinion to mean something entirely different.

*Farmers & Merchants State Bank v. Snodgrass & Sons Const. Co.,* 209 Kan. 119, 495 P.2d 985 (1972) is the sole case relied upon to support the holding that the letter here constitutes an "independent contract." We respectfully suggest that this reliance is unfounded. That case is inapposite for the reason that the agreement between the contractor and the bank did not specify "per" the subcontract, as here. It stated that the contractor held an amount in retainage and that when all work was completed he would pay the entire amount retained by making a check to the subcontractor and the bank. The court noted in *Snodgrass* that the agreement did not even refer to the subcontract. Id. 495 P.2d at 990.

The contracts in *Snodgrass* were not executed at or about the same time, as here. The bank in that case was not aware that the phrase "work is completed" had a special meaning in the construction industry which required the subcontractor to pay for

all labor and materials provided. In our case ABC knew that Sunland was to pay for these items before final payment would be due.

Although our majority cites *Snodgrass* in support of an "independent contract" theory, *Snodgrass* did not turn on that principle, but was decided on the theory of "reliance" or promissory estoppel. Id. 495 P.2d at 989. There is no evidence that ABC relied on receiving the total amount even if there was a failure of performance by Sunland.

The key difference is that *Snodgrass* involves an unconditional promise to pay the bank, while in our case payment is to be made "per" contract, thus creating a conditional promise to pay.

There is no substantial evidence to support the findings of fact and conclusions of law entered by the trial court and relied upon for its holding that there was an unconditional contract to pay to ABC the entire amount mentioned in the letter. The cause should be reversed and judgment ordered for Coachman on this issue.

We agree with the disposition made by the majority on the second issue.

SOSA, J., concurs.