Curtis COLLINS and Anne Collins, Individually and on behalf of their son, Curtis M. Collins, Jr., Plaintiffs-Appellants,

v.

UNITED STATES of America, Defendant-Appellee.

No. 81–1515.

United States Court of Appeals, Tenth Circuit.

April 12, 1983.

Rehearing Denied June 24, 1983.

Ronald C. Morgan, Albuquerque, N.M., for plaintiffs-appellants.

L.D. Harris, Asst. U.S. Atty., Albuquerque, N.M. (R.E. Thompson, U.S. Atty., Albuquerque, N.M., with him on the brief), for defendant-appellee.

Before HOLLOWAY, BARRETT and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

Plaintiffs Curtis and Anne Collins appeal from the district court's order granting the United States' motion for summary judg-

ment in this medical malpractice action brought under the Federal Tort Claims Act, 28 U.S.C. § 1346(b). In granting the motion, the district court held that a release executed between these plaintiffs and a hospital and persons connected with that hospital settling a prior malpractice action in state court, to which the United States was not a party, operated to release the United States from liability.

On December 30, 1977, the plaintiffs brought their fourteen-day-old son, Curtis M. Collins, Jr., to Presbyterian Hospital Center in Albuquerque, New Mexico, where he was examined. Eight hours later, still on December 30, the plaintiffs took the child to the Public Health Service Indian Hospital in Albuquerque, where he was again examined and diagnosed to have meningitis. Some time thereafter plaintiffs brought suit in New Mexico state court against Presbyterian Hospital and persons connected with that hospital, alleging that negligent failure to diagnose the child's illness as meningitis resulted in injuries to the child, including irreversible brain damage. On May 8, 1979, the parties to the suit signed a document titled "Release and Settlement Agreement." On July 31, 1979, the plaintiffs filed an administrative claim with the United States Department of Health, Education, and Welfare, alleging that the Public Health Hospital and its employees failed to properly treat the child after diagnosing the condition as meningitis, causing irreversible brain damage. The administrative claim was denied and the plaintiffs filed the instant suit, alleging the same negligence described in the administrative claim. The United States filed a motion for summary judgment, relying on the release given in the settlement of the state court action. The district court granted that motion, finding that no disputed issue of material fact existed because the release was unambiguously a general release and that the United States, as a joint tortfeasor, was protected by the release.

On appeal, the plaintiffs allege that the trial court improperly put the burden of showing the existence of a material issue of fact on the plaintiffs and erred in its legal conclusion that the United States was a joint tortfeasor with Presbyterian Hospital. They also argue that a material issue of fact exists concerning whether the parties to the release intended the United States to be released from liability.

█ Summary judgment is proper only when the party seeking it demonstrates that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). We reverse the trial court's grant of summary judgment only if we find that a material issue of fact does exist or that the trial judge made an incorrect conclusion of law. *Western Casualty & Surety Co. v. National Union Fire Insurance Co.*, 677 F.2d 789, 791 n. 1 (10th Cir.1982). Under the Federal Tort Claims Act, we apply the law of the jurisdiction in which the tort occurred. *Wright v. United States*, 568 F.2d 153, 156 (10th Cir.1977); *Ahern v. Veterans Administration*, 537 F.2d 1098, 1101 (10th Cir.1976). The district judge properly looked to New Mexico law to determine whether the United States had been released from liability.

The district court held that the release at issue here was unambiguous and that its terms operated to release the United States. There is no doubt that the release executed between the plaintiffs and the state court defendants contained language broad enough to cover the United States. It provided:

"Releasors and Releasees desire that any and all claims that Releasors or Curtis M. Collins may have against Releasees be extinguished with finality and the parties hereto further desire to extinguish any and all claims that may possibly be brought by any other entity against Releasees, including but not limited to claims for contribution or indemnity, arising out of medical and hospital treatment provided by Releasees to or on behalf of Curtis M. Collins on or about December 30, 1977 or at any time prior to the date hereof. Releasors therefore agree that this agreement shall be construed as a

full and final release of any person or entity who is or may be liable for damages to Curtis M. Collins by reason of any diagnosis or treatment of a condition known as spinal meningitis or the failure to diagnose and treat such condition.

. . . . .

In consideration of the sum of Forty Six Thousand Dollars ($46,000.00), the receipt of which sum is hereby acknowledged, Releasors do hereby forever release and discharge Jeffrey Sollins, M.D., Medical Emergency Services, P.A., Mike Ironside and Presbyterian Hospital Center, their insurers, agents, servants and employees and all other persons, firms or corporations from any and all claims of every kind and character that are now or may hereafter be asserted by Releasors or by any party purporting to act on behalf of Curtis M. Collins arising out of, caused by, or in any manner connected with medical and hospital care provided to or on behalf of Curtis M. Collins on or about December 30, 1977 or at any time prior to the date hereof. And specifically Releasors do hereby release and discharge all claims set forth in the pleadings in the aforesaid litigation in Bernalillo County District Court."

The United States was a person who provided medical or hospital care on or about December 30, 1977. The release can fairly be interpreted to mean that the United States was to be released from liability.[1] However, in the remainder of the release, the only hospital care referred to is that given at Presbyterian Hospital on December 30; there is no mention that the United States, the Indian Hospital, or any of its employees gave independent care several hours later on December 30. The release can also be read to mean that all persons are released from any liability arising from

the medical care given at Presbyterian Hospital. That care was the subject of the suit out of which the release arose and is the only medical care specifically mentioned in the release document.

■ A release is ambiguous if it is fairly susceptible to more than one meaning. See *Vickers v. North American Land Developments, Inc.*, 94 N.M. 65, 607 P.2d 603, 606 (1980); *Major v. Bishop*, 462 F.2d 1277, 1279 (10th Cir.1972). In holding that the release was unambiguous, the district court relied on the similarity of the language of this release to the release in *Johnson v. City of Las Cruces*, 86 N.M. 196, 521 P.2d 1037, 1037-38 (Ct.App.1974). In that case, broad language was construed to release all parties from liability for a specified accident. The instant case is distinguishable from *Johnson*. There was only one incident in *Johnson* out of which liability could arise— an automobile accident. That accident was specified in the release, which specifically released all parties from liability in connection with the accident. The situation that gives us pause in this case—whether the care referred to was that of both hospitals or only that of Presbyterian—was not at issue in *Johnson*. Also, in *Johnson* there was no allegation that the release was ambiguous.

■ In this case, we are in as good a position to evaluate the release document as the trial judge. We believe that the release in this case is fairly susceptible to more than one meaning. Therefore, we hold that the release was ambiguous concerning whether the parties intended to release the United States from liability. Because a material issue of fact exists as to the intent of the parties, we hold that the district court erred in granting the United States' motion for summary judgment. We do not

---

1. If the United States and Presbyterian Hospital were joint tortfeasors, Presbyterian may have had some exposure to the United States under N.M.Stat.Ann. §§ 41-3-1 to -8, the Uniform Contribution Among Tortfeasors Act, and the parties may have intended to release the United States to protect Presbyterian. It should be noted, however, that the United States, through its Assistant Regional Attorney for the Department of Health, Education, and Welfare, signed a statement prior to the date the release was executed, providing:

"Any claims of the U.S. Department of Health, Education, and Welfare against Presbyterian Hospital arising from the alleged malpractice are hereby waived."

foreclose the possibility that after a hearing in which it explores the intent of the parties, the district court might find that the parties intended to release the United States.[2]

REVERSED AND REMANDED for proceedings consistent with this opinion.

---

2. We need not address the plaintiffs' contention that the district court erred in concluding that the United States was a joint tortfeasor with Presbyterian Hospital Center. The release would release the United States from liability regardless of its status as a joint tortfeasor, if the parties intended that result. We note that under current New Mexico comparative negligence law, which may be applicable to this case, *see Scott v. Rizzo,* 96 N.M. 682, 634 P.2d 1234, 1242 (1981), the United States might not be considered a joint tortfeasor with Presbyterian. *See Bartlett v. New Mexico Welding Supply, Inc.,* 98 N.M. 152, 646 P.2d 579 (Ct.App. 1982). Because of our disposition of this case, we also do not reach the plaintiffs' claim that the district court improperly shifted the burden of proving the existence of a material issue of fact to the plaintiffs.