884 P.2d 847

**Irene LUJAN, Individually and as next friend of her minor son, Martin Lujan, Plaintiff–Appellant,**

v.

**HEALTHSOUTH REHABILITATION CORPORATION, Healthsouth of New Mexico, Inc., and Mercedes Chavez, Defendants–Appellees.**

No. 15279.

Court of Appeals of New Mexico.

Sept. 26, 1994.

Certiorari Granted Nov. 8, 1994.

Kim E. Kaufman, M. Terrence Revo, Allan L. Knighten, The Revo Law Firm, Albuquerque, for plaintiff-appellant.

Alice Tomlinson Lorenz, Jill Burtram, Miller, Stratvert, Torgerson & Schlenker, P.A., Albuquerque, for defendants-appellees.

*OPINION*

PICKARD, Judge.

Plaintiff brought an action in her individual and representative capacities against Defendants, claiming they committed medical malpractice in treating the injuries caused to her son by a tortfeasor. The issue in this case is whether Plaintiff's release of the tortfeasor, and of all persons and corporations who together with the tortfeasor "may be jointly or severally liable" to Plaintiff for claims "arising out of" the accident with the tortfeasor, acts as a bar to Plaintiff's malpractice claim against Defendants. We hold that Plaintiff's claim is barred, and we affirm the district court's grant of summary judgment in favor of Defendants.

In January 1990, Martin Lujan was involved in a vehicular accident with Nancy Jaramillo. Martin suffered serious injuries in the accident, including an open fracture of his left femur. In February 1990, Martin was transferred to Defendant Healthsouth's facility for rehabilitation. Defendant Mercedes Chavez worked at the facility. Plaintiff alleges that in March 1990, Chavez improperly maneuvered Martin's left leg while changing the leg's dressings, thereby refracturing it at the original femoral fracture site.

Plaintiff, Martin's mother, then filed a personal injury lawsuit against Jaramillo. Defendants were not named in this suit. In February 1991, Plaintiff settled with Jaramillo. As part of the settlement, Plaintiff signed a release of all claims as part of the settlement. Among other things, the release provided the following:

> IN CONSIDERATION of the sum of One Hundred Thousand Dollars, ($100,000) the receipt and sufficiency of which is hereby acknowledged by IRENE LUJAN, individually and as the mother, guardian, and next best friend of her minor son[ ] MARTIN LUJAN.... [hereinafter called "Releasors"], Releasor individually and for their heirs, executors, administrators and assigns does hereby forever release and discharge NANCY JARAMILLO, and her agents, servants, employees, representatives, insurance companies, attorneys, successors and assigns, and also any and all other persons, associates, or corporations, whether herein named or referred to or not, and who together with the above-named parties may be jointly or severally liable to the Releasors, or anyone else acting on behalf of or through the derivative rights of the Releasors, [hereinafter "Releasee"] of and from any and all claims, causes of action, rights suits, covenants, contracts, agreements, judgments and demands of whatsoever kind or nature that Releasors have or may have against Releasee for damages to Releasors' person or property arising out of an accident on or about January 27, 1990, at the intersection of Blake and Tapia, SW, Albuquerque, New Mexico.

In March 1993, Plaintiff filed an action against Defendants alleging that the March 1990 incident involving Martin's leg constituted medical malpractice. Defendants moved for summary judgment, arguing that Jaramillo "may be jointly or severally liable" with Defendants for Martin's injuries, and as such the release also applied to them. The district court granted the motion, and Plaintiff appeals.

■ We believe our recent decision in *Perea v. Snyder*, 117 N.M. 774, 877 P.2d 580 (Ct.App.), *cert. denied*, 118 N.M. 90, 879 P.2d 91 (1994), controls this case. In *Perea*, a plaintiff was injured by a truck that was driven by one joint tortfeasor and owned by another joint tortfeasor. The plaintiff signed a release in which the driver tortfeasor and "every other person, firm, or corporation" were released from liability. The plaintiff then sued the owner tortfeasor, and the owner, relying on the general release clause in the plaintiff's release, moved for summary judgment. *Id.* at 775–76, 877 P.2d at 581–82. We first held that the owner, as movant, had the initial burden of showing an absence of material fact or that it was entitled to summary judgment as a matter of law, and that the owner had met this burden by attaching to its motion a copy of the release which showed on its face a general release of all persons, firms, or corporations. *Id.* at 777, 877 P.2d at 583. We then held that once the owner had made this prima facie showing, the burden shifted to the plaintiff to show

either a genuine factual issue or that the owner was not entitled to summary judgment as a matter of law. *Id.*

Defendants here attached to their motion a copy of the Jaramillo release, which on its face purports to release all persons and corporations "who may be jointly or severally liable" with Jaramillo for damages to Plaintiff arising out of the January 1990 accident. Whether this satisfies Defendants' initial burden raises two questions: 1) "may" Defendants have been severally liable with Jaramillo; and 2) did the damages Plaintiff seeks from Defendants arise out of the accident? We believe that the answer to both of these questions is in the affirmative.

■ As to the first question, Defendants correctly point out that prior to the adoption of comparative fault in this state, an original tortfeasor was held liable for the negligence of subsequent tortfeasors such as physicians. For example, in *Vaca v. Whitaker,* 86 N.M. 79, 83, 519 P.2d 315, 319 (Ct.App.1974), we followed the rule that when a judgment against an original tortfeasor is satisfied, the plaintiff is barred from then recovering from a physician for subsequent malpractice. In so doing, we noted that the reason behind this rule is that "the original wrongdoer is liable for negligence of the physician in treating the injured person." *Id.* Further, even after the adoption of comparative fault, we assumed that an original tortfeasor "may be liable for the additional harm caused the victim by a physician negligently treating the victim if negligent treatment is the foreseeable result of the original injury[.]" *Martinez v. First Nat'l Bank,* 107 N.M. 268, 271, 755 P.2d 606, 609 (Ct.App.1987), *certs. dismissed,* 107 N.M. 308, 756 P.2d 1203 (1988). Although we recognize that foreseeability of injury is usually a fact question, *see Calkins v. Cox Estates,* 110 N.M. 59, 61, 792 P.2d 36, 38 (1990), the language in this release—that anyone with whom Jaramillo "may" be jointly or severally liable is released from liability—does not require a factual or legal certainty. Defendants' alleged negligent treatment of Martin's injured leg occurred during rehabilitation for the injury caused by the accident. A fact finder might reasonably have found that the treatment was a foreseeable result of that accident. Consequently, Jaramillo "may" have been severally liable with Defendants for the additional harm done to Martin's leg; therefore, Defendants come within the language of the release as a matter of law.

As to the second question, we again point out that the leg that was allegedly refractured due to Defendants' malpractice was the same leg that had been broken in the January 1990 accident. Indeed, as Plaintiff admitted in her complaint, the refracture occurred during rehabilitation that included "care and treatment of the left femoral fracture," and the refracture was "at the original femoral fracture site." Because of this, we simply do not believe a reasonable fact finder could conclude that Plaintiff's claim against Defendants did not arise out of the January 1990 accident as provided in the release, and we hold as a matter of law that it did. *Cf. Torres v. State,* 116 N.M. 379, 383, 862 P.2d 1238, 1242 (Ct.App.) (although issue of whether a defendant has breached a duty is generally a fact question to be determined by the jury, it becomes a question of law where no reasonable fact finder could conclude that a breach of duty has occurred), *cert. granted,* 117 N.M. 802, 877 P.2d 1105 (1993). Consequently, we hold that Defendants have satisfied their initial burden that the release of all claims applies to them.

The burden, therefore, then shifted to Plaintiff to show either a genuine factual issue or that Defendant was not entitled to summary judgment as a matter of law. *See Perea,* 117 N.M. at 777, 877 P.2d at 583. Plaintiff argues on appeal, as she did below, that the release was at least ambiguous as to whom she intended to release from liability, and that a material issue of fact is raised thereby. Ambiguity arguments prompt "first, an inquiry to determine whether there was an ambiguity in the general release clause, with extrinsic evidence allowed to aid in the determination, and second, if found to be ambiguous, an inquiry to determine the parties' true intent of the meaning to be given to the clause." *Id.* at 779–80, 877 P.2d at 585–86; *see also Mark V, Inc. v. Mellekas,* 114 N.M. 778, 781, 845 P.2d 1232, 1235 (1993). Contrary to Plaintiff's assertions, we

do not believe the terms of the release, read as a whole, were ambiguous. In the absence of evidence showing otherwise, we assume that Jaramillo's purpose in entering into the settlement was to put an end to her potential liability in this matter either to the injured person or anyone else seeking contribution. *See Perea,* 117 N.M. at 778, 877 P.2d at 584. The terms of the release, which covered persons with whom she might be severally liable, were broad enough to accomplish that purpose.

Further, the only extrinsic evidence offered by Plaintiff on the issue of ambiguity was an affidavit signed by Plaintiff in which she stated that the settlement was not intended to release Defendants from liability. The affidavit asserted, in pertinent part, the following:

On February 6, 1991, I [Plaintiff] entered into a settlement agreement regarding the auto accident on behalf of myself and my son. That settlement agreement was intended only to release Nancy Jaramillo, the opposing driver in the January 27, 1990 accident, her representatives, and all who might be liable through her. It was certainly never intended that Healthsouth Rehabilitation Corporation, and/or Healthsouth of New Mexico, Inc. and/or Mercedes Chavez, be released. They were not parties to the suit regarding the January 27, 1990, accident and were never involved in the negotiations nor the signing of the release. *I always saw their actions as separate and distinct from the actions of Mrs. Jaramillo. I always thought of the injury, which they caused my son, as be-ing a new injury which was not Nancy Jaramillo's fault.* I am seeking damages against Mercedes Chavez and her employers because they are responsible for rebreaking Martin's leg and, further, causing him to have long term problems that he would not have had if they had not rebroken it.

(Emphasis added.) We believe the emphasized sentences show that Plaintiff's affidavit was only a statement of her own intent in signing the release. Indeed, Plaintiff concedes as much in her supplemental brief. As we held in *Perea,* however, an attempt to raise a factual issue about the intent in a plaintiff's own mind is insufficient to establish that a release is ambiguous. *Perea,* 17 N.M. at 780, 877 P.2d at 586. Consequently, we hold that Plaintiff has failed to meet her burden in this case, and that Defendants' motion for summary judgment was properly granted. *See id.* at 780–81, 877 P.2d at 586–87.

For the foregoing reasons, the judgment of the district court is affirmed.

IT IS SO ORDERED.

MINZNER, C.J., and BLACK, J., concur.